**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| GEORGE F. STARR, JR., | : | |
| | : | |
| | : | Civil No. 06-5991 (NLH)(JS) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| JOHN E. POTTER, | : | |
| POSTMASTER GENERAL, | : | |
| | : | |
| Defendant. | : | |

---

**Appearances:**

F. Michael Daily, Jr., Esquire
F. Michael Daily, Jr., LLC
Sentry Office Plaza
216 Haddon Avenue
Suite 106
Westmont, NJ 08108
*Attorney for Plaintiff George F. Starr, Jr.*

Leah A. Bynon, Esquire
Assistant United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102
*Attorney for Defendant John E. Potter, Postmaster General*

**HILLMAN, District Judge**

Plaintiff George Starr filed a complaint alleging that
Defendant United States Postal Service ("USPS") violated the
Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.
("Rehabilitation Act"), when the USPS terminated Starr's
employment. The USPS subsequently filed a motion to dismiss for

lack of subject matter jurisdiction and, in the alternative, for summary judgment in its favor.  For the reasons expressed below, this Court first concludes that it lacks subject matter jurisdiction over any appeal or review of Plaintiff's prior petition contesting his dismissal before the Merit Systems Protection Board ("MSPB").  Second, this Court finds that Plaintiff waived his right to bring any claim of discrimination before this Court or any other tribunal by failing to first raise such a claim before the MSPB.  Lastly, we find that even if Plaintiff had not waived such a claim, the Equal Employment Opportunity Commission ("EEOC") properly dismissed his administrative petition.  Accordingly, the USPS's motion is granted.

## I. JURISDICTION

Plaintiff, a former federal employee, alleges, among other things, that he was discriminated against in violation of Section 504 of the Rehabilitation Act and seeks review of adverse administrative decisions of the MSPB and the EEOC.  Therefore, this Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  To the extent Defendant challenges this Court's subject matter jurisdiction over certain constructions of Plaintiff's claims, we properly exercise jurisdiction to determine the scope of our subject matter jurisdiction.

2

Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc., 905 F.2d 42, 45 (3d Cir. 1990).

## II. BACKGROUND

George Starr was employed by the USPS for nearly nine years as a mail handler at its Bellmawr, New Jersey facility.  The USPS initially elected to terminate Starr's employment on June 23, 2005, as a result of excessive absenteeism.  After he filed a petition for appeal of his termination to the MSPB, Starr and the USPS engaged in settlement negotiations.  These negotiations continued for several months until, on October 5, 2005, the parties entered into a Release of Claim and Last Chance Settlement Agreement ("Last Chance Agreement").  Under this arrangement the USPS rescinded its decision of removal, in exchange for which Starr agreed to a number of terms, including a stipulation that he regularly attend work and a waiver of the right to appeal any termination resulting from his breach of the Agreement.

On January 13, 2006, after Starr had resumed work for several months and compiled additional absences,[1] the USPS issued

---

[1] The categorization of Plaintiff's absences during this time are an issue of contention.  His employer claims that they were unscheduled, unprotected under the Family and Medical Leave Act, and occurred after Plaintiff had exhausted his annual leave. Plaintiff, however, claims that of the fifteen unscheduled absences, only four were not approved in advance and that three of these were attributable to illness, leaving to fill a prescription, and severe weather.  He does not recall being absent on the fourth day.

a letter warning that his conduct represented a potential violation of the Last Chance Agreement.  Starr apparently failed to challenge or respond to this letter.  Starr alleges that he was banned from the work site on or around March 17, 2006, and that such action by the USPS was in breach of the Last Chance Agreement.  On April 5, 2006, a Notice of Removal confirming that Starr's absences constituted a breach of the Last Chance Agreement was issued, followed a month later by a Letter of Decision that effectively ended his employment.

Following his termination, Starr filed petitions with the MSPB and the EEOC on May 16 and July 24, 2006, respectively.  The MSPB dismissed Starr's petition for lack of jurisdiction, observing that the Last Chance Agreement was a valid and enforceable contract.  The MSPB further found that, in the event Starr had breached the Last Chance Agreement, the contract's terms effectively precluded him from appealing to the MSPB.  As a result, the primary issue according to the MSPB was whether Starr breached the Agreement by failing to be in attendance regularly.  After citing a lengthy history of attendance troubles, the MSPB rejected Starr's justifications that his absences were mischaracterized by the USPS, finding instead that his actions were sufficient to constitute a breach of the Last Chance

Agreement.[2]  Starr subsequently filed a petition for review with
the Court of Appeals for the Federal Circuit, but the petition
was dismissed for failure to pay the docketing fee.

In separate EEOC complaint filed more than a month after his
petition to the MSPB,[3] Plaintiff alleged discrimination on
account of disability and age in addition to challenging his
removal.[4]  Starr, a veteran, maintains that he suffers from
bursitis, psoriasis, and Post-Traumatic Stress Disorder ("PTSD"),
for which he has been classified by the Department of Veterans
Affairs ("VA") as 60% disabled.  A Final Agency Decision was
issued by the EEOC on November 13, 2006, finding that no
discrimination had occurred.  Specifically, the Final Agency
Decision held that Starr, to the extent he was unable to
demonstrate he was disabled within the meaning of the
Rehabilitation Act, failed to meet any of the three elements
essential to establishing a prima facie case of discrimination

---

[2] In response to Plaintiff's mischaracterization argument,
the MSPB "note[d] that a considerable portion of the absences
were not only unscheduled, but the appellant had no sick or
annual leave to cover them.  Moreover . . . a number of the
absences were not recorded as unscheduled by his supervisor in an
effort to cover up the extent and nature of these absences."

[3] As we note _infra_, it appears Plaintiff litigated his
dismissal in two separate administrative forums, without
informing either body.

[4] Plaintiff has apparently abandoned his age discrimination
claim, instead proceeding only with his allegation of disability
discrimination.

based upon disability, or that he was treated differently than similarly situated non-disabled individuals.  The Decision further noted that, even in the event Starr had met his burden of establishing a prima facie case, his violation of the Last Chance Agreement constituted a legitimate, nondiscriminatory reason for the USPS's decision to terminate.  With regard to the age discrimination claim, the Decision stated that there was no evidence age was a consideration in the termination.

Plaintiff then brought this action.  The Complaint sets forth two counts:  Count I alleges Plaintiff was subjected to discriminatory treatment in his employment for the USPS; Count II, although not entirely clear, we construe as either (a) requesting this Court review the MSPB decision that the USPS had just cause in its decision to terminate Plaintiff's employment, or (b) asserting that the MSPB decision does not preclude Plaintiff from bringing his discrimination claim before this Court.

Defendant has filed a motion for dismissal and summary judgment on the basis that (1) this Court lacks jurisdiction to review the MSPB determination; (2) because Plaintiff improperly filed an EEOC challenge to his termination after filing an MSPB challenge, he is not entitled to review of the EEOC decision; (3) Plaintiff has failed to establish a prima facie case of discrimination based on disability pursuant to the Rehabilitation

6

Act; and (4) Plaintiff waived any right to appeal his removal by entering into the Last Chance Agreement.

## III. DISCUSSION

### A.  Standard for Summary Judgment

We adjudge Defendant's motion under the standard set forth in Federal Rule of Civil Procedure 56.[5]  Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.

In considering a motion for summary judgment, a district

_____

[5] Although styled as a motion to dismiss under Rule 12 *and* a summary judgment motion, Defendant asks the Court to decide the issue of subject matter jurisdiction by relying on matters outside the pleadings - namely the scope of Plaintiff's petition to the MSPB.  Accordingly, with Plaintiff having had notice of and an opportunity to rebut the contention that his MSPB petition was limited to his contractual claim, we consider Defendant's motion under Rule 56.

court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255). Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Subject Matter Jurisdiction Over Count II**

Because one of the alleged defects in Plaintiff's case concerns the Court's subject matter jurisdiction, we turn first to the initial construction of Count II, which asserts that this Court has jurisdiction to review the MSPB determination. Defendant contends that this Court lacks jurisdiction to review

the MSPB decision because Plaintiff alleged no discrimination in challenging his termination before the MSPB.[6]  If the subject matter jurisdiction of the Court is challenged, the plaintiff bears the burden of persuasion.  See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  In addition, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" Id. (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

A federal employee who feels he was wrongly terminated may file suit challenging the termination after he has exhausted his administrative remedies.  If the claim alleges discriminatory treatment, a district court has jurisdiction.  Kean v. Stone, 926 F.2d 276, 283 (3d Cir. 1991); 5 U.S.C. § 7703(b)(2).  If, however, no discrimination is alleged, jurisdiction lies solely with the Court of Appeals for the Federal Circuit pursuant to 5

_____

[6] Defendant states in his brief, "Moreover (*although not requested in his Complaint*) plaintiff is not entitled to review of the MSPB decision because the Federal Circuit has exclusive jurisdiction over actions raising only non-discriminatory civil service-related claims." (emphasis added)  It would appear, however, that is exactly what Count II of the Complaint requests. This count asks that the Court review Plaintiff's removal.  Given the fact that the removal was previously appealed to the MSPB, although not explicitly pleaded, the Court construes Plaintiff's Complaint as a request to review the MSPB decision.

U.S.C. § 7703(b)(1).  <u>Kean</u>, 926 F.2d at 283; 28 U.S.C.A. §

1295(a)(9); 5 U.S.C. § 7703(b)(1).

The latter is the case here.  As explained below, before he

filed a second, procedurally defective mixed petition before the

EEOC, Plaintiff intentionally elected the MSPB as his forum of

choice to challenge his termination.  By failing to bring

allegations of discrimination in that setting, sole jurisdiction

to review the decision of the MSPB belongs to the Federal

Circuit.[7]  Thus, to the extent that Count II of the Complaint

requests review of the MSPB's determination, this Court lacks

subject matter jurisdiction to conduct such a review.

## C.  **Review of the EEOC Decision - Waiver**

According to the Court's second construction of Count II,

Plaintiff appears to allege that the MSPB decision does not bar

him from bringing his discrimination claim before this Court.

Defendant responds by arguing that Plaintiff inappropriately

---

[7] The Federal Circuit has already dismissed Plaintiff's
appeal for failure to prosecute in accordance with the rules.
"[A] dismissal for failure to prosecute operates as an
adjudication on the merits, and thus is a dismissal with
prejudice, barring further action between the parties."  <u>Landon
v. Hunt</u>, 977 F.2d 829, 833 (3d Cir. 1992)(<u>citing</u> <u>Napier v. Thirty
or More Unidentified Federal Agents</u>, 855 F.2d 1080, 1087 (3d Cir.
1988)); Fed. R. Civ. P. 41(b). It would appear, therefore, that
even if this Court had subject matter jurisdiction, the doctrine
of claim preclusion would bar any suit based on the Last Chance
Agreement brought after the Federal Circuit's decision.  <u>See</u> <u>Poll
v. Snow</u>, 2006 WL 1767112, at *5 (D.Utah June 22, 2006); <u>Varner v.
Reich</u>, 1995 WL 264670, at *5 (W.D.N.Y. Apr. 28, 1995); <u>Collier v.
United States</u>, 720 F.Supp. 75, 78 (W.D.La. 1989), <u>aff'd without
opinion</u>, 896 F.2d 550 (5th Cir. 1990).

filed challenges to his termination with both the MSPB and the EEOC and, because the EEOC complaint was the later filing of the two, the EEOC's subsequent decision is not entitled to review and Plaintiff is barred from bringing his discrimination claim.

Plaintiff asserts that he has set forth a "mixed case" appeal of his termination.  "A mixed case is an appeal . . . from an adverse personnel action, coupled with an allegation that the action was based on prohibited discrimination." Austin v. Merit Systems Protection Bd., 136 F.3d 782, 782 (Fed. Cir. 1998); see 5 U.S.C. § 7702 (2006).  "Pursuant to 29 C.F.R. § 1614.302(b), the employee is afforded two options:  she can file either a mixed case complaint with her agency's EEO[C] office or a mixed case appeal directly to the MSPB, 'but not both.'" Burkhart v. Potter, 166 Fed.Appx. 650, 652 n.4 (3d Cir. 2006).  Section 1614.302(b) explains that "whichever is filed first shall be considered an election to proceed in that forum."  "Accordingly, if an employee believes that discrimination is a component of an adverse personnel action, the issue of discrimination must be raised from the outset irrespective of whether the employee elects to file with his agency's EEO[C] or the MSPB." Casimier v. United States Postal Service, 142 Fed.Appx. 201, 204 (5th Cir. 2005); see also Harris v. Postmaster General of U.S. Postal Service, 38 Fed.Appx. 19, 20 (D.C. Cir. 2002) ("Appellant was required to have both his discrimination claim and his improper termination claim decided

11

in the forum he initially elected-the MSPB."); <u>McAdams v. Reno</u>, 64 F.3d 1137, 1142-43 (8th Cir. 1995) (ruling that plaintiff waived her discrimination claims by failing to raise them in her MSPB appeal, which was based upon "similar issues arising out of overlapping facts"); <u>Chappell v. Chao</u>, 388 F.3d 1373, 1378 (11th Cir. 2004) ("[A] federal employee who wants to preserve both discrimination and non-discrimination claims after a final order from the MSPB *must* do so by bringing all his related claims in federal district court.").

It is undisputed that Plaintiff initially elected to appeal his termination to the MSPB.  It was not until more than a month later that, without having exhausted his administrative remedies, he filed with the EEOC, this time alleging discriminatory treatment as well.[8]  Defendant claims that by first challenging his removal with the MSPB, Plaintiff is deemed to have elected to proceed in that forum rather than through the EEOC process, and that the EEOC filing was therefore improper.  As a result, Defendant contends that Plaintiff should not be entitled to review of the EEOC opinion.  Plaintiff argues in response that it

---

[8] Defendant argues here that Plaintiff's discrimination case should be barred because by failing to raise such a claim before the MSPB he failed to exhaust his administrative remedies in that setting.  We note that the government does not appear to have raised an exhaustion defense before the EEOC itself and that, in any event, the EEOC filing itself could be construed as sufficient exhaustion of the administrative process. Under these circumstances, we would not dismiss Plaintiff's complaint on this basis alone.

was Defendant's refusals to accept his health certifications that
constituted discrimination, and that he was unable to bring the
discrimination claims because he was unaware of the
discrimination at the time he brought the MSPB appeal.

Plaintiff's argument is without merit.  The health
certifications the USPS refused range from October 18, 2005 to
April 22, 2006.  Plaintiff filed his petition with the MSPB on
May 16, 2006, and has alleged no additional discriminatory
treatment by Defendant after this date. Thus, the argument that
he was unaware of the existence of discrimination at the time of
his MSPB filing is unavailing.

Additionally, Plaintiff appears to suggest that because his
petition to the MSPB requested enforcement of the Last Chance
Agreement, he could not also allege discrimination in that
petition.  That contention is incorrect.  Once Plaintiff was
fired, he had two choices.  First, he could appeal to the MSPB,
asserting the USPS's failure to abide by the Last Chance
Agreement.[9]  Second, he could have filed a claim for
discrimination with the EEOC, and not challenged his termination
pursuant to the Last Chance Agreement.  If he chose the first
option and was aware of the allegedly discriminatory treatment at
that time, he was required to raise the discrimination issue with

---

[9] The MSPB maintained exclusive rights to enforcement of the
Last Chance Agreement pursuant to the agreement's terms.

the MSPB as well.[10]  What Plaintiff could not do, however, was
appeal to the MSPB and also file a complaint with the EEOC,
because filing in both forums on the same claim is prohibited.
See 29 C.F.R. § 1614.302 ("An aggrieved person may initially file
a mixed case complaint with an agency pursuant to this part or an
appeal on the same matter with the MSPB pursuant to 5 CFR
1201.151, *but not both*.") (emphasis added).

It is also evident that Plaintiff was made aware of the
requirement that he bring all claims, including those of
discrimination, before one administrative body.  The USPS's
Letter of Decision terminating Plaintiff's employment read, "If
you believe that the action is based, in whole or in part, on
discrimination, you have the option of filing an appeal with the
MSPB or filing an EEO[C] complaint with the Postal Service, but
not both."  Moreover, the Petition for Appeal Plaintiff filed
with the MSPB expressly inquired whether "the agency action or
decision was the result of prohibited discrimination."

---

[10] In spite of Plaintiff's contention that he could not have
brought the discrimination claims in seeking enforcement of the
Last Chance Agreement, he could and should have done just that.
Plaintiff correctly observes that when a contract such as a last
chance agreement contains a waiver of the right to appeal,
subsequent removal based on a violation of the contract can only
be appealed through non-frivolous arguments that he did not
breach the agreement, that he did not voluntarily enter into the
agreement, or that the agency acted in bad faith.  See Stewart v.
United States Postal Service, 926 F.2d 1146 (Fed. Cir. 1991).  It
would be difficult to find a situation where a bad faith argument
is more appropriate than here, where Plaintiff maintains
discrimination to be the true cause of his termination.

This Court therefore concludes that Plaintiff, knowing of his right to file a mixed petition with the MSPB and failing to do so, waived his right to bring a discrimination claim. Chappell v. Chao, 388 F.3d 1373, 1378 (11th Cir. 2004).

**D.  Plaintiff's Rehabilitation Act Claim**

It is clear that despite being made aware that he could not simultaneously advance down two administrative tracks, Plaintiff, proceeding pro se, nonetheless filed with the EEOC.  The Court notes its concern that allowing Plaintiff to proceed with his appeal of the EEOC decision would seemingly permit him two bites at the apple.  However, because the EEOC decision was issued – albeit inappropriately – this Court will review it.

**1.  Prima Facie case**

Defendant argues that even if this Court were to entertain Plaintiff's discrimination claim, Plaintiff has failed to establish a prima facie case of disability discrimination pursuant to the Rehabilitation Act.

Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service.

29 U.S.C. § 794(a).

15

A claim of disability discrimination is analyzed under the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1974).  See Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007)("[T]he familiar framework established in McDonnell Douglas Corp. v. Green for Title VII cases is equally applicable to discrimination claims under the Rehabilitation Act.")(citations omitted).  Under that framework, a plaintiff must first establish a prima facie case.  To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must demonstrate that: (1) he was disabled; (2) he was qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) he was nonetheless subject to an adverse employment action.  Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  If a plaintiff fails to meet this burden, summary judgment is appropriate.

With respect to the first prong, a "disability" is defined as a physical or mental impairment that substantially limits a major life activity.  Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 194 (2002).  However, "merely having an impairment does not make one disabled" for purposes of the Rehabilitation Act.  Id. at 195.  Instead, to constitute substantial limitation an impairment must "prevent or severely restrict the individual from doing activities that are of central

16

importance to most people's daily lives." Id. at 185.
Statutorily-provided examples of major life activities include
caring for oneself, performing manual tasks, walking, seeing,
hearing, speaking, breathing, learning, and working. 29 C.F.R. §
1630.2(I); see also Eshelman v. Agere Systems, Inc., 554 F.3d
426, 434 (3d Cir. 2009).

Defendant contends that Plaintiff has not demonstrated he is
disabled within the meaning of the law, and therefore cannot meet
the first element of a prima facie claim. Plaintiff responds by
arguing that his classification by the VA as 60% disabled clearly
demonstrates he is disabled due to three ailments: bursitis,
PTSD, and psoriasis.[11]  And while Plaintiff acknowledges that the
mere presentation of medical documentation indicating an
impairment is insufficient to establish a disability, he only
describes the bursitis in any detail as affecting a life
activity.[12]  The life activities that he claims are affected by

_____

[11] In his Complaint, Plaintiff alleged only that he suffers
from "numerous physical and mental impairments," causing "on a
temporary basis h[is inability] to perform major life functions
such as working, traveling or attending to his ordinary everyday
affairs."  It was not until his Brief in Opposition to Dismissal
and Summary Judgment that Plaintiff identified the specific
ailments described here.  His Brief also changed the affected
major life functions to "carrying and lifting," in apparent
response to case law cited in Defendant's motion that impairments
cannot be temporary.

[12] Plaintiff's pleadings do not discuss psoriasis aside from
the initial claim that it was diagnosed by the VA.  His mention
of PTSD, beyond the diagnosis itself, appears only in passing and
is not discussed in terms of constituting any substantial

the bursitis are carrying and lifting.

The only discrimination Plaintiff alleges he experienced, however, was on the basis of PTSD, not bursitis.  Specifically, Plaintiff contends that his employer was unaware he suffered from PTSD until after he returned to work following the Last Chance Agreement.  Upon his return, Defendant requested Plaintiff update his health certifications, at which time he indicated that he was affected by mental health issues.  Plaintiff alleges "[i]t was the notice that [he] suffered with PTSD that cause[d] the defendant to sit up and take notice," and that it acted as motivation for his subsequent termination.  Meanwhile, Plaintiff makes no mention of any discrimination based upon either his bursitis or psoriasis.  Thus, although he maintains that his diagnoses of bursitis and psoriasis should be taken into account when considering whether he is disabled, neither impairment is relevant to his allegation that he was discriminated against because of his PTSD.

Plaintiff has confused his burden.  Rather than establishing a prima facie case of discrimination based upon either a mental or a physical ailment, he has selected certain factors from each to fashion a patchwork claim that does not meet the required

_____

limitation on a major life activity. <u>See</u> <u>Pl.'s Opp'n to Summ. J.</u> ("Ducking under tables due to loud noises or sudden movement or other behavior in the workplace is not conducive to performing one's duties.").

standard.  Neither standing alone nor together do Plaintiff's alleged impairments demonstrate a disability as defined by the Rehabilitation Act.  As a result, Plaintiff is unable to set forth a prima facie case of disability discrimination under the Rehabilitation Act and summary judgment will be entered in Defendant's favor.

### 2.  Legitimate, Nondiscriminatory Reason for Termination and Pretext

Even if Plaintiff had been successful in setting forth a prima facie case, he has failed to show that the proffered reason for Defendant's decision to terminate his employment was pretextual.

Under the <u>McDonnell Douglas</u> burden shifting paradigm, after a plaintiff successfully establishes a prime facie case, a presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir.1994).  This is a light burden.  <u>Id.</u>

"Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who

19

must now show by a preponderance of the evidence that the
employer's explanation is pretextual." Id.  If the plaintiff has
established a prima facie case, he will successfully oppose
summary judgment through one of two paths: "(I) discrediting the
proffered reasons, either circumstantially or directly, or (ii)
adducing evidence, whether circumstantial or direct, that
discrimination was more likely than not a motivating or
determinative cause of the adverse employment action." Id. at
764.  "To discredit the employer's proffered reason, however, the
plaintiff cannot simply show that the employer's decision was
wrong or mistaken, since the factual dispute at issue is whether
discriminatory animus motivated the employer, not whether the
employer is wise, shrewd, prudent, or competent." Id. at 765.

Defendant has cited Plaintiff's violation of the Last Chance
Agreement as its reason for terminating his employment.[13]  The

_____

[13] This analysis is made strictly with respect to Plaintiff's
discrimination claim, and is not a review of the MSPB's
determination that the USPS terminated Plaintiff in accord with
the Last Chance Agreement.  As discussed above, jurisdiction over
review of that determination lies solely with the Federal
Circuit.
        Similarly, we decline to address Defendant's contention
that Plaintiff has waived any right to appeal his removal by
entering into the Last Chance Agreement.  The Last Chance
Agreement reads:
                "Appellant agrees to waive his right to grieve
                or appeal any Agency action based upon his
                failure to meet the provisions set forth in
                the Last Chance Agreement . . . . 'Appeal' is
                defined as an appeal to the Merit Systems
                Protection   Board,   the   Equal   Employment
                Opportunity Commission, the Office of Special

terms of the Last Chance Agreement state, "For absences not protected by [the Family and Medical Leave Act ("FMLA")], Appellant is not permitted to have any unscheduled absences (including sick leave, emergency annual leave and tardiness)," unless he supplied acceptable documentation or excuses. Defendant points to Plaintiff's numerous subsequent absences as evidence of his breach, along with his failure to submit acceptable excuses for the absences.

As both parties agree, a number of the absences Defendant points to were apparently improperly recorded as "scheduled" by a supervisor.[14]  Plaintiff argues that he should not be held responsible for the wrongful actions of his supervisor and that these absences should not be counted against him.  According to

---

Counsel, the National Labor Relations Board, or any other Court of Law." Specifically, Defendant maintains that, following Plaintiff's removal for excessive absenteeism and his appeal to the MSPB, the Board correctly resolved whether Plaintiff had breached the Last Chance Agreement and whether Defendant acted in bad faith in is enforcement of the Agreement.  See Stewart v. United States Postal Service, 926 F.2d 1146 (Fed. Cir. 1991); McCall v. United States Postal Service, 839 F.2d 664 (Fed. Cir. 1988).  As a result, Defendant argues, Plaintiff has exhausted his right to appeal pursuant to the Last Chance Agreement.

As the Court has stated, we believe jurisdiction to review the Last Chance Agreement, its terms, its alleged breach, and the MSPB's decisions on those issues, lies with the Court of Appeals for the Federal Circuit and not here.

[14] Among these improperly recorded dates are several instances in which Plaintiff was permitted to take "leave without pay" even after he had exhausted his annual leave.  During these periods Plaintiff ventured on a six-day hunting trip and enjoyed the Super Bowl, among other things.

Plaintiff, he gave notice of time off to his employer in each instance set forth by Defendant except two: December 18, 2006, when Plaintiff believes he appeared at work, and February 12, 2006, which he claims was caused by a travel advisory due to severe weather.

Assuming *arguendo* that Plaintiff is correct to the extent he should not be held responsible for his supervisor's conduct, he can still be said to have violated the terms of the Last Chance Agreement as a result of the February 12 absence.  After missing work, Plaintiff claimed that a snowstorm led to a state of emergency, thereby justifying his absence.  This excuse was deemed unacceptable and refused by his supervisor – who maintained that no such state of emergency occurred – and was discussed in detail in the Notice of Proposed Removal issued on April 5, 2006.  Pursuant to the Last Chance Agreement, Defendant had the option to immediately remove Plaintiff for this conduct alone.  Defendant asserts that these absences constitute its legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

In response, Plaintiff claims that Defendant's proffered explanation of excessive absenteeism is merely pretextual. Plaintiff asserts instead that the true basis for his termination was the USPS's discovery that he suffered from PTSD.

Plaintiff suggests that Defendant was not aware of the

22

condition until after the parties entered into the Last Chance Agreement, when he submitted his updated health certifications pursuant to Defendant's request.  Upon learning that he suffered from mental issues, Plaintiff claims, the USPS decided to terminate him because Postal Service employees have a reputation for "going postal."  He also states that Defendant denied proper FMLA documentation that could have excused otherwise violative absences.

Beyond these allegations, however, Plaintiff has not presented this Court with any credible evidence showing that Defendant's articulated reason for termination was pretextual. In this case, Plaintiff has simply failed to satisfy the burden required of him.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted. An Order consistent with this Opinion will be entered.


Date: March 31, 2009            s/ Noel L. Hillman

At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.